

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

November 18, 2020

**BY ECF**
The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Mathis Joseph*, 16 Cr. 246 (JSR)

Dear Judge Rakoff:

      The Court is scheduled to sentence the defendant, Mathis Joseph, on November 24, 2020. The Government respectfully submits this letter in advance of sentencing. Pursuant to the plea agreement in this case (the "Plea Agreement"), the parties have stipulated that the applicable Guidelines range is 46 to 57 months' imprisonment (the "Stipulated Guidelines Range"). For the reasons that follow, the Government respectfully submits that a sentence within the Stipulated Guidelines Range is appropriate in this case.

## BACKGROUND

### I.    The Offense Conduct

      In 2014, FBI agents began investigating a drug trafficking organization ("DTO") that, among other things, (i) arranged for individuals to visit doctors' offices and receive prescriptions for oxycodone that they do not intend to use, (ii) filled those prescriptions at a Ekwunife Pharmacy in Brooklyn, New York (the "Pharmacy"), and (iii) distributed those oxycodone pills to purchasers in the New York metropolitan area. Presentence Investigation Report, October 8, 2020 ("PSR") ¶ 10. The conspiracy was led by Gilberto Cabrera, who was not a medical professional. Cabrera's relative Robert Hespeth also played a significant role in the conspiracy. PSR ¶ 11. Cabrera and Hespeth recruited co-conspirators – like co-defendant Sheri Bowen – willing to obtain prescriptions of oxycodone that they do not intend to use. *Id.* Cabrera and Hespeth then arranged for the co-conspirators to visit doctors' offices in Brooklyn, New York. *Id.* Frequently, before a coconspirator visited the doctor, Cabrera or Hespeth would provide the co-conspirator with urine that would test positive for oxycodone, so that the doctor would believe that the co-conspirator was, in fact, taking oxycodone. *Id.*

The defendant was involved in the sale of large quantities of illegally obtained oxycodone for the DTO. PSR ¶ 13. Judicially-authorized wiretaps on Cabrera's phone revealed repeated instances in which the defendant arranged for the purchase of distribution-quantity oxycodone. For example, on or about April 18, 2015, the defendant and Cabrera had a call during which they discussed the sale of 90 oxycodone pills. PSR ¶ 15. Similarly, on September 9, 2015, Cabrera and the defendant had a call during which they discussed the sale of 80 oxycodone pills. PSR ¶ 19. Again, on October 2, 2015, Cabrera and the defendant consummated the sale of 90 oxycodone pills. PSR ¶ 21. Each time, these transactions involved 30-milligram oxycodone pills, and the defendant is responsible for the distribution of approximately 1,000 30-milligram oxycodone pills. PSR ¶ 39.

## II.     Procedural History

The FBI arrested the defendant on May 14, 2020. (PSR at 1). On July 28, 2020, the defendant pled guilty, pursuant to the Plea Agreement, to conspiring to distribute and possess with the intent to distribute oxycodone, in violation of Title 21, United States Code, Sections 841(b)(1)(C) and 846. PSR ¶ 3. In the Plea Agreement, the parties calculated the defendant's Criminal History Category as III, and the total offense level, after deducting three points for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b), as 21. *Id.* That calculation resulted in the Stipulated Guidelines Range of 46 to 57 months' imprisonment. *Id.*

## III.    The Probation Office's Recommendation

In the PSR, the Probation Office concluded that the defendant's applicable Guidelines range is 57 to 71 months' imprisonment, based on an applicable base Guidelines offense level of 21 and a Criminal History Category of IV. PSR ¶ 94. While Probation's calculation of the offense level is the same as that stipulated to by the parties in the Plea Agreement, the Criminal History Category differs. PSR ¶ 95. While the Probation Office's Guidelines calculation is technically correct, the Government stands by the Plea Agreement and the Stipulated Guidelines Range therein. The Probation Office recommends a below-Guidelines sentence of 18 months' imprisonment. This recommendation is based primarily on the seriousness of the offense and the defendant's criminal history, balanced against the defendant's own history of substance abuse, difficult childhood, and the need to avoid unwarranted sentencing disparities. PSR at p. 22-23.

## DISCUSSION

In light of the nature and circumstances of the instant offense, as well as the history and characteristics of the defendant, the Government respectfully submits that the Court should impose a sentence within the Stipulated Guidelines Range of 46 to 57 months' imprisonment in this case. The 18 U.S.C. § 3553(a) factors applicable here include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to protect the public from harm, to provide just punishment, and to afford adequate deterrence to this defendant and to other similarly situated individuals. *See* 18 U.S.C. § 3553(a)(2)(A)-(B). Each of these considerations weighs in favor of a sentence within the Stipulated Guidelines Range.

The defendant's conduct in trafficking oxycodone was undeniably serious. He was involved in a large-scale organization that used fraudulent prescriptions and a corrupted

pharmacist to obtain oxycodone that they then resold. While the Government is sympathetic to the defendant's claims that he joined the DTO to feed his own addiction, the Court should not absolve him from his role in helping other addicts succumb to the same perils that he suffered. As the Court is well aware, opioid addiction continues to menace this community, and the illegal resale marked for oxycodone and other opioids remains a raging issue. The defendant played a role in this market, and the sentence imposed should reflect this unfortunate reality.

The defendant's history and characteristics, and the need to deter him from future criminal conduct, also speak to the need for a serious sentence. This is not the defendant's first arrest, and he has not just sold oxycodone. First, in January 2007, the NYPD arrested the defendant for selling a controlled substance to an undercover police officer. PSR ¶ 55. Three years later, in 2010, the NYPD again arrested the defendant after he made a series of sales of crack cocaine to an undercover officer over the course of a month. PSR ¶ 56. In 2011, the defendant was arrested for driving under the influence, and he registered a .165 blood alcohol content on a precinct breathalyzer. PSR ¶ 57. Again in 2015, the defendant drove under the influence of alcohol, and was again arrested. PSR ¶ 58. He remains on probation in connection with those charges. *Id.* Thus, clearly, the defendant's prior interactions with law enforcement and prior arrests have not served to deter him from illegal conduct. If anything, the defendant has grown more aggressive and egregious over time, and has graduated from the sale of crack cocaine in 2011 to his participation in the instant offense. As such, a serious sentence is warranted.

The Government is certainly sympathetic to aspects of the defendant's submission, in particular that he suffered a car accident earlier this year, recently was infected with COVID-19, and had a challenging upbringing. However, it also bears mention that during his interviews with the Probation Office, the defendant reported that he has worked "on and off" from 2017 to 2020, and reported no other employment history. PSR ¶ 87. Further, the Probation Office was unable to confirm even this detail of his supposed employment. PSR ¶ 88. In addition, while the defendant previously participated in substance abuse treatment in connection with one of his prior DUI convictions, he never reported to his substance abuse counselor that he had been addicted to oxycodone. PSR ¶ 84. Thus, to the extent the defendant is sentenced to some term of supervision, the Government respectfully requests that his supervision include both drug testing and treatment and employment training.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 46 to 57 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

                                              Respectfully submitted,

                                              AUDREY STRAUSS
                                              Acting United States Attorney

By:   /s/_____
       Jordan Estes / Jason A. Richman
       Assistant United States Attorneys
       (212) 637-2543 / 2589

cc:     Mitchell Elman, Esq. (by ECF)